1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

| HARLAN EVANS,

Plaintiff,

v.

JOANNE B. BARNHART,
Commissioner of Social Security,

Defendant. | Case No.  C04-5602RBL

REPORT AND
RECOMMENDATION

Noted for September 23, 2005 |

16

17

18

19

20

21

22

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  The plaintiff, Harlan Evans, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner). This matter has been briefed by the parties.  The undersigned now submits the following report, recommending that the Court affirm the administrative decision.

23

24

25

26

27

28

Mr. Evans was awarded social security disability benefits on June 20, 1995, based on physical impairments associated with his back.   The award was reviewed in February 1997 and in October 2000. The October 2000 review resulted in a determination that Mr. Evans was no longer disabled and thus, not entitled to further benefits.  The administration ceased benefits in December 2000.   The cessation of benefits was affirmed by an ALJ, and Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of

1  the Social Security Act (the Act), 42 U.S.C. § 405(g).

2  **STANDARD OF REVIEW**

3  The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the

4  decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th

5  Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant

6  evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,

7  402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla

8  but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

9  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

10  interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579

11  (9th Cir. 1984)

12  **STATUTORY AND REGULATORY FRAMEWORK**

13  In determining whether a claimant's disability benefits should be terminated, Social Security

14  regulations outline an eight-step sequential process:

15  *Evaluation steps.* To assure that disability reviews are carried out in a uniform manner, that
decisions of continuing disability can be made in the most expeditious and administratively

16  efficient way, and that any decisions to stop disability benefits are made objectively,
neutrally and are fully documented, we will follow specific steps in reviewing the question

17  of whether your disability continues. Our review may cease and benefits may be continued
at any point if we determine there is sufficient evidence to find that you are still unable to

18  engage in substantial gainful activity. The steps are:

19  (1) Are you engaging in substantial gainful activity? If you are (and any applicable
trial work period has been completed), we will find disability to have ended (see paragraph
(d)(5) of this section).

20  (2) If you are not, do you have an impairment or combination of impairments which
meets or equals the severity of an impairment listed in Appendix 1 of this subpart? If you

21  do, your disability will be found to continue.

22  (3) If you do not, has there been medical improvement as defined in paragraph
(b)(1) of this section? If there has been medical improvement as shown by a decrease in
medical severity, see step (4). If there has been no decrease in medical severity, there has

23  been no medical improvement. (See step (5).)

24  (4) If there has been medical improvement, we must determine whether it is related
to your ability to do work in accordance with paragraphs (b)(1)-(4) of this section; i.e.,
whether or not there has been an increase in the residual functional capacity based on the

25  impairment(s) that was present at the time of the most recent favorable medical
determination. If medical improvement is not related to your ability to do work, see step

26  (5). If medical improvement is related to your ability to do work, see step (6).

27  (5) If we found at step (3) that there has been no medical improvement or if we
found at step (4) that the medical improvement is not related to your ability to do work, we

28  consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them
apply, your disability will be found to continue. If one of the first group of exceptions to medical
improvement applies, see step (6). If an exception from the second group of exceptions to medical

improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to engage in substantial gainful activity in accordance with § 404.1561. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

Here, the ALJ found significant medical improvement enabling Plaintiff to perform light level work. The ALJ specifically found Plaintiff was capable of returning to his past work as a lumber grader.  Plaintiff alleges the ALJ's decision in this case is not properly supported by substantial evidence and is not free of legal error.   Plaintiff asks the court to overturn the decision of the Commissioner in this case.   As noted above and discussed below, after reviewing the matter, the undersigned finds the ALJ's decision was properly supported and free of legal error.

## **DISCUSSION**

### *A.   The ALJ's Finding Of Significant Medical Improvement Is Properly Supported By The Record*

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747,

751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ relied heavily on the medical record and plaintiff's medical history to make his final decision. The ALJ noted Plaintiff's long history of low back pain and two prior spinal surgeries in the 1990's (Tr. 18, 191-265, 373-73). The ALJ discussed Plaintiffs continued use and treatment with methadone (Tr. 19, 322-67, 382-385, 396-406). Specifically, the ALJ noted that records from Dr. Snook, Plaintiff's treating doctor at the Pain Management Clinic dated September 1997, to January 2000, revealed that Plaintiff's chronic pain was being controlled nicely with methadone (Tr. 19, 322-381). During multiple medical examinations Dr. Snook reported that Plaintiff was in no acute distress and moved and walked well (Tr. 322-381).

The ALJ also summarized the findings of Dr. Lonian, an examining physician, who reported that Plaintiff had a slight decrease in range of motion in his back, but no tenderness (Tr. 19, 397-388). The ALJ noted Dr. Lonian's finding of left calf atrophy, essentially normal straight leg raising tests, and observation that Plaintiff had a normal gait (Tr. 19, 387-388). The ALJ further noted that in Dr. Lonian's opinion Plaintiff's back problem would not prevent him from sitting, walking, or standing with regular breaks (Tr. 19, 388-389).

The ALJ also discussed the findings of Dr. Lyman, who reported that Plaintiff was doing well on his current dose of methadone, with some minor pain, but was able to remain functional with his current dosing (Tr. 19, 400). The ALJ noted that Dr. Lyman found Plaintiff to be "… very functional. Apparently he went on a trip down to Arizona" (Tr. 19, 398).

Finally, the ALJ noted the opinions of Dr. Blacklund, Dr. Turner, and Dr. Hoskins, who reviewed the medical evidence at the state agency (Tr. 19, 390-95, 417-24). Dr. Blacklund noted medical improvement in five areas during an August 2000 examination including improved range of motion in Plaintiff's lumbosacral spine, negative straight leg raising tests, strength, sensation, and reflexes (Tr. 393). On September 11, 2000, Dr. Turner opined that Plaintiff was capable of light work based upon the examination of Dr. Lonian (Tr. 418, 423-24). On September 16, 2000, Dr. Hoskins concurred with Dr.

1  Turner's findings (Tr. 19, 424).

2      Having concluded that Plaintiff had a severe impairment that was not disabling at step six

3  (Tr. 20, 27, Finding 2), the ALJ was required to determine Plaintiff's RFC before continuing to

4  step seven and if necessary step eight of the sequential evaluation process. The medical evidence relied on

5  by the ALJ supports his decision that Plaintiff medical condition has significantly improved.

6  **B. The ALJ's RFC Assessment Is Properly Supported And Free Of Legal Error**

7      "[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity

8  for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App.

9  2 § 200.00(c) (emphasis added).  In evaluating whether a claimant satisfies the disability criteria, the

10  Commissioner must evaluate the claimant's "ability to work on a sustained basis."  20 C.F.R. §

11  404.1512(a). The regulations further specify:  "When we assess your physical abilities, we first assess the

12  nature and extent of your physical limitations and then determine your residual functional capacity for work

13  activity on a regular and continuing basis." Id. at § 404.1545(b).  This is not a medical issue; the ALJ has

14  the responsibility for determining Plaintiff's residual functional capacity.

15      Here, the ALJ considered the record, including Plaintiff's testimony (that he found not totally

16  credible, as discussed below) and concluded he retained the RFC for work at the light level of exertional

17  capacity (Tr. 27-28, Finding 6). This finding was supported by the medical evidence particularly the

18  opinions of Dr. Lonian, Dr. Blacklund, Dr. Hoskins, Dr. Turner, and Dr. Lyman., as discussed above.

19  Accordingly, the ALJ's RFC finding is properly supported.

20  **C.  The ALJ Properly Found Plaintiff not Entirely Credible**

21      When a claimant has a  medically documented severe impairment that could reasonably be expected

22  to produce some degree of the symptoms the claimant complains of, "the ALJ may reject the claimant's

23  testimony regarding the severity of symptoms only if she makes specific findings stating clear and

24  convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). The ALJ's

25  findings must be properly supported by the record, and "must be sufficiently specific to allow a reviewing

26  court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

27  'arbitrarily discredit a claimant's testimony regarding pain.'"Bunnell v. Sullivan, 947 F.2d 341, 345-346

28  (9th Cir. 1991)(en banc).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to

1   perform household chores and other activities that involve many of the same physical tasks as a particular

2   type of job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, as further explained in Fair v.

3   Bowen, supra, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does

4   not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may

5   not be easily transferrable to a work environment where it might be impossible to rest periodically.

6           Here, the ALJ properly determined Plaintiff's allegations that he could not perform any work were

7   not entirely credible.  The ALJ noted that Plaintiff reported that he did several of daily activities and others

8   as well, including riding a lawn mower, doing some light gardening, playing racquet ball, walking and, in

9   general, being more functional (Tr. 21, 25, 397, 403-04). The ALJ further noted that Plaintiff managed a

10  move to Washington from California, drove to and from Arizona, and took a trip to Arkansas to visit a

11  Bible College (Tr. 25, 335, 398, 465-66).  The ALJ properly cited these daily activities in discrediting

12  Plaintiff's testimony, which would indicate he was unable to do such activities.  If a claimant submits

13  medical evidence of an underlying impairment, but testifies that he experiences pain (or other symptoms) at

14  a higher level, the Commissioner may disbelieve that testimony.  Nyman v. Heckler, 779 F.2d 528, 531

15  (9th Cir. 1985).

16          Plaintiff's credibility was further questioned in light of the lack of medical evidence to support the

17  severity of limitation he claimed (Tr. 25). Here, the ALJ noted that Plaintiff had not seen a doctor in over

18  three years and that he was observed by several health care providers including doctors to be in no acute

19  distress (see discussion above) (Tr. 25, 324-29, 384-85, 387, 409). Observations by various medical

20  providers noted that he ambulated normally, moved well, and changed positions without significant

21  discomfort (Tr. 25, 383, 401-02).

22          The ALJ also noted evidence of drug seeking behavior (Tr. 25, 409). Contrary to Plaintiff's

23  argument that this activity were legitimate attempts to get refills for a prescription pain medication he had

24  been taking for 12 years, the ALJ noted apprehension from two concerned physicians who were of the

25  opinion that Plaintiff's request went beyond legitimate use for his back pain (Tr. 383-84, 409-10).  Plaintiff

26  argues that the ALJ did not consider the side effects of his pain medications that make him euphoric and

27  cause significant memory loss when taken in quantity to relieve his pain (Tr. 459, 464). As noted above,

28  the ALJ correctly noted several activities that belie those allegations (Tr. 25-26).

1    In sum, the ALJ's findings regarding the allegations made by Plaintiff are properly supported by the

2    record.

3    ***D. The ALJ's Step-Seven Determination Is Properly Supported And Free Of Legal Error***

4    Plaintiff has the burden of persuasion that he is unable to perform his past relevant work

5    at step-seven of the sequential evaluation process and entitled to disability benefits.  20 C.F.R. §§

6    404.1594(f).

7    The ALJ found that Plaintiff could return to his past relevant work as a lumber grader (Tr. 26, 28,

8    Findings 7 & 8).  To the extent the limitations alleged by Plaintiff were supported by the record, and

9    imposed some restriction on his ability to perform work activities, they were adequately accounted for in

10   the ALJ's assessment of Plaintiff's RFC, discussed above (Tr. 24-26..  The ALJ also noted Plaintiff's

11   statements that he did not lift more than 20 pounds occasionally or bend and reach more than occasionally,

12   and that his past relevant work required sitting for about six hours, walking for one hour and standing for

13   one hour were consistent with his RFC (Tr. 26, 104-05). Further, the ALJ noted that the DOT

14   described the job of lumber grader as light and semi-skilled work (Tr. 26, 155). See DOT available at WL

15   669.687-030. The ALJ reasonably concluded that Plaintiff could return to his past relevant work as he

16   performed it as well as performed generally in the national economy.

17   <u>**CONCLUSION**</u>

18   The ALJ's decision is supported by substantial evidence in the record.  Therefore, the Court should

19   AFFIRM the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal

20   Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written

21   objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for

22   purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by

23   Rule 72(b), the clerk is directed to set the matter for consideration on **September 23, 2005**, as noted in the

24   caption.

25   DATED this 8th day of September, 2005.

26

27                              */s/ J. Kelley Arnold*
                              J. Kelley Arnold
                              U.S. Magistrate Judge

28